FILED
United States Court of Appeals
Tenth Circuit

July 9, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KEITH FRAZIER,

Plaintiff - Appellant,

v.

P. FLORES, 2 Unit Manager, CCCF; P.
PACHECO, Chief of Unit Management,
CCCF; C. AMATO, Correctional Officer,
CCCF; P. CORONA, Correctional
Officer, CCCF; A. HARRIS, Correctional
Officer, CCCF; SMELSER, Warden,
CCCF; R. SELMAN, Assistant Warden,
CCCF; A. DeCESARO, Step 3 Grievance
Officer, CDOC,

Defendants - Appellees.

No. 13-1535
(D.C. No. 1:13-CV-00891-LTB)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **McKAY**, and **MATHESON**, Circuit Judges.

After examining the briefs and the appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination of this

appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is therefore ordered

submitted without oral argument.

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Plaintiff Keith Frazier, who is currently incarcerated in state prison, filed this pro se § 1983 complaint in which he alleged his due process rights were violated when Defendants confiscated and destroyed his personal property. Specifically, Plaintiff alleged correctional officers searched his cell and seized "a manila envelope full of weekly charts, album reviews, artist interviews, special articles and features, photos, etc. that were culled from his subscription music publications," as well as "an order form and printed descriptions of approximately 100 books and DVD[]s available for purchase [from a particular company], which were culled from their catalogs that were sent to him over the past three years." (R. at 7.) The officers claimed these items were contraband because they had been clipped out of the original publications and were therefore altered. Plaintiff alleges that the officers denied his request to mail the items to someone outside the facility and instead threw them away.

Plaintiff sought relief through the prison grievance procedure, but his grievances were denied. Plaintiff argued the confiscated materials were not contraband despite the alterations because they were reading materials. For support, he cited to Colorado Department of Corrections Administrative Regulation 150-01, which then described contraband in pertinent part as "any item that has been altered and/or is being used for other than its intended purpose (this does not include reading materials, refer to AR 300-26, *Offender Reading Material*) . . . ." CDOC AR 150-01 at 3 (2009).[1] However, in

---

[1] As it currently stands, this regulation now provides in pertinent part that the definition of contraband includes "[a]ny item that a DOC . . . offender is not specifically

denying Plaintiff's final administrative grievance, the Step 3 Grievance Officer explained that AR 300-26, the more specific regulation referred to in the regulation cited by Plaintiff, in fact provided that reading materials are considered contraband if they are "altered materials that do not contain the required DOC label or stamp." (R. at 23.) Specifically, this regulation provided:

> When reading materials are found in an offender's cell, possession, or property that are considered contraband for reasons other than content, they may be automatically disposed of in accordance with AR 300-06, *Searches and Contraband Control*. Examples are reading materials that do not belong to the offender, are being used in bartering situations, or altered materials that do not contain the required DOC label or stamp, etc.

CDOC AR 300-26 at 2 (2008).[2]

After he was denied relief through the prison grievance procedure, Plaintiff filed a complaint in state court. The defendants filed a motion to dismiss. After receiving no response from Plaintiff, the state court dismissed the complaint based on the arguments and authority set forth by the defendants in their motion.

Plaintiff then filed the instant federal case, in which he alleged that each Defendant was "culpable for the violation of the plaintiff's right to 'due process' via the unlawful confiscation and destruction of his personal property." (R. at 9-10.) The district court

---

authorized to have in his/her possession; [and] any item that has been altered and/or is being used for other than its intended purpose including reading materials deemed sexually explicit pursuant to to [sic] AR 300-26, *"Publications"*[]." CDOC AR 150-01 at 3 (2014).

[2] No such language appears in the current form of this regulation. *See* CDOC AR 300-26 (2012).

dismissed the case as frivolous. The court first noted that Plaintiff's due process rights were not violated if the altered reading materials were correctly classified as contraband. The district court further held that even if Plaintiff was correct in arguing the materials were not contraband, he was alleging a random and unauthorized deprivation of property under color of state law, which does not give rise to a § 1983 claim if there is an adequate state post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Finally, the district court concluded that Plaintiff's due process claim failed because the state provided an available and adequate post-deprivation remedy through both the prison grievance procedure and the state court system.

On appeal, Plaintiff first argues that the district court erred in failing to construe his complaint as raising a claim of First Amendment retaliation. Plaintiff concedes he did not "directly mention" such a claim, but he argues the district court should nonetheless have found that a retaliation claim was stated under a liberal reading of the complaint. (Appellant's Br. at 3a.) In particular, he notes that the complaint alluded to his filing of grievances and a lawsuit and further suggested that one defendant's actions "might just have a retaliatory underpinning." (R. at 8.) However, even under a liberal construction of the complaint, we are not persuaded that his conclusory suggestions of a possible retaliatory motive were sufficient to state a claim of First Amendment retaliation. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("The broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based.")

Plaintiff next argues the district court erred in concluding the seized items might be classified as contraband under the applicable prison regulations. However, the court's decision did not depend on whether or not the items were contraband, and thus we, like the district court, do not need to resolve this issue on appeal. Additionally, while the then-applicable versions of CDOC AR 150-01 and CDOC AR 300-26 were arguably in some conflict, it is not at all clear that the prison's interpretation of these regulations was incorrect. Under CDOC AR 300-26, it appears that Plaintiff's magazine and newspaper clippings may have been properly classified as contraband as "altered [reading] materials that do not contain the required DOC label or stamp." CDOC AR 300-26 at 2 (2008).

Third, Plaintiff contends the district court erred in construing his complaint to allege a random and unauthorized deprivation of his property. Plaintiff argues that his property was instead seized pursuant to correctional officers' "policy of purposely misconstruing and/or misapplying [CDOC] AR's in order to give themselves license/justify confiscating (and destroying) any inmate property that they wanted, including the plaintiff's." (Appellant's Br. at 3c). He then argues he was entitled to a pre-deprivation hearing because his property was seized pursuant to a consistent policy and not just a random, unauthorized act. However, individual correctional officers' alleged practice of arbitrarily seizing inmates' property with scant justification is not the type of "established state procedure" under which the state can "predict precisely when the loss will occur" and thus provide a hearing beforehand. *Parratt v. Taylor*, 451 U.S. 527, 541 (1981).

Finally, Plaintiff contends he should have been permitted to amend his complaint in order to allege that the state's post-deprivation remedies were inadequate. He argues that the prison grievance procedure provided an inadequate remedy because prison officials deliberately misconstrued their own regulations in order to deny him relief. He further argues the state court system provided an inadequate remedy based on the mailing restrictions imposed on him by the prison. Specifically, because he has accumulated several hundred dollars of postage debt while in prison, the prison has allegedly restricted his postage to $2 per month unless and until his postage debt drops below $300.[3] Plaintiff alleges he had already used up his allotted monthly postage allowance when the defendants filed their notice to dismiss in the state court case, and thus his mailing restrictions prevented him from replying. He then argues that his inability to reply to the motion to dismiss rendered the state court remedy inadequate for due process purposes.

We do not usually consider arguments made for the first time on appeal. Moreover, even if we were to consider these arguments, we are not persuaded that Plaintiff's new arguments are sufficient to give rise to a viable due process claim. The fact that the grievance officers disagreed with Plaintiff's interpretation of the apparently conflicting prison regulations does not prove the prison grievance process was

---

[3] Although Plaintiff has provided us with a copy of a letter purporting to restrict his postage costs to $2 per month, the financial information he attached to his *in forma pauperis* motion indicates that Plaintiff has regularly been permitted to exceed this amount. We assume for purposes of decision that Plaintiff's postage is indeed restricted to $2 per month as he alleges.

-6-

unavailable or inadequate. Besides his disagreement with the grievance officers'

reasoning and some conclusory allegations of bias, Plaintiff has not set forth any other

reason for finding this post-deprivation remedy inadequate. We accordingly see no error

in the district court's conclusion that Plaintiff's due process claim fails based on the

existence of an available and adequate post-deprivation remedy through the prison

grievance process. Because we affirm the district court's ruling on this basis, we need not

consider Plaintiff's arguments regarding the effects of his postage limits on the adequacy

of the remedy provided by the state court process.

We **AFFIRM** the district court's dismissal of the case. Plaintiff's motion to

proceed *in forma pauperis* on appeal is **GRANTED**; however, plaintiff is reminded of his

continued obligation to pay the filing fee in partial payments until it is paid in full.

Entered for the Court


Monroe G. McKay
Circuit Judge